UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DR. ROBERT VERYZER,

           Plaintiff,

    -against-

RENSSELAER POLYTECHNIC INSTITUTE,

           Defendant.

**VERIFIED COMPLAINT &
JURY TRIAL DEMAND**
Case No. 1:12-CV-0394 (DNH/RFT)

---

Plaintiff, Dr. Robert Veryzer, as and for his complaint, by his undersigned counsel, The Murray Law Firm, PLLC, alleges as follows:

## NATURE OF THE CLAIMS

1.    This is an action for declaratory and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and wrongful termination, including Defendant's unlawful discrimination against Plaintiff on the basis of his disability, retaliation and hostile work environment, all in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§12101 et seq. ("ADA"), Section 503 of the ADA, 42 U.S.C. §12203, and the New York State Human Rights Law, New York Executive Law §§290 et seq. ("NYSHRL").

2.    Defendant's conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to his professional and personal reputations, and severe mental anguish and emotional distress.

## JURISDICTION STATEMENT

3.    The Plaintiff has commenced this action seeking to recover for damages he incurred as a result of the Defendant's violation of Title I of the Americans with Disability Act of 1990 (42 USCS

§12101 et seq.). Accordingly, this Court has jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1343(4).

4. Additionally, the Plaintiff's action asserts state law claims under the New York State Human Rights Law, New York Executive Law §§290 et seq. ("NYSHRL") which are so related to the aforesaid federal claim that it forms part of the same controversy. Accordingly, this Court has pendent jurisdiction of the Plaintiff's state law claims pursuant to 28 USCS §1367 (a).

## STATEMENT OF VENUE

5. This action is properly venued before the United States District Court in and for the Northern District of New York pursuant to 28 USC §1391 on the grounds that the alleged unlawful employment practices occurred within the territorial limits of the Northern District of New York; and, at all times relevant hereto, the Defendant transacts business within the territorial limits of the Northern District of New York; and, at all times relevant hereto, the Defendant maintains copies of the applicable personnel records within the territorial limits of the Northern District of New York.

## JURY DEMAND

6. Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PARTIES

7. At all times relevant hereto, the Plaintiff, Dr. Robert Veryzer, (hereinafter referred to as "Dr. Veryzer") is an individual who was a resident of the Town of Clifton Park, County of Saratoga, State of New York.

8. Dr. Veryzer, in 2001, received vaccines containing toxic substances which caused physical symptoms and brain trauma resulting in severe cognitive impairment, extreme fatigue, rashes and motor skill difficulties, all of which constitute physical impairments that substantially limit one or more of his major life activities.

9.     Upon information and belief, at all relevant times, the Defendant, RENSSELAER POLYTECHNIC INSTITUTE (hereinafter referred to as "Defendant" or "RPI") is a private research university incorporated in the State of New York, located in the City of Troy, County of Rensselaer, State of New York.

10.     Upon information and belief, at all relevant times, RPI employs more than 500 individuals and continuously has been engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 107(7) of the ADA, 42 U.S.C. §12117(a).

11.     Upon information and belief, RPI is an employer as that term is defined under the ADA and NYSHRL, and has continuously been and is now doing business in the State of New York and the County of Rensselaer.

12.     Dr. Veryzer was employed by RPI from 1993 to 2009.

## PROCEDURAL REQUIREMENTS

13.     Dr. Veryzer has satisfied all procedural requirements prior to commencing this action.

## BACKGROUND FACTS APPLICABLE TO ALL COUNTS

14.     Dr. Veryzer graduated from Michigan State University, with a Master's Degree in Business Administration with a concentration in marketing in 1986.

15.     Dr. Veryzer received his Ph.D. (Doctor of Philosophy) (Department of Marketing) from the University of Florida in 1993.

16.     Dr. Veryzer began employment with RPI in 1993 as an Assistant Professor and was promoted to Associate Professor (with tenure) in 1999.

17.     For 10 years, Dr. Veryzer was employed as an Associate Professor in the Lally School of Management and Technology at RPI in Troy, New York.

18.     Dr. Veryzer has received a number of awards for teaching and research, among these: Rensselaer Outstanding Faculty Award (selection made by the student body of the school); Selected as Lally School of Management and Technology "Master Teacher," Best Paper Award, Journal of Product Innovation Management; Recognized for Outstanding Research, The First Biennial Faculty Recognition

Reception Rensselaer Polytechnic Institute; The Rensselaer Lally School of Management & Technology "Against All Odds" Award for Diligence and Effort (for contributions in developing and implementing the innovative, new Rensselaer Lally School M.B.A. Curriculum); as well as significant research grant awards.

19.     In April 2001, in preparation for a trip overseas, Dr. Veryzer received the Hepatitis A and Hepatitis B Vaccines.

20.     As a result of taking the vaccines, Dr. Veryzer suffered physical symptoms and brain trauma.  The vaccine contained toxic substances, among them Thimerosal mercury and aluminum which have been linked to such effects.

21.     The symptoms of this poisoning included severe cognitive impairment (as well as physical symptoms, e.g. extreme fatigue, rashes and motor skill difficulties.)

22.     For several years, Dr. Veryzer struggled to control his symptoms and continue his career, even as his condition deteriorated.

23.     Dr. Veryzer's doctors advised that his condition would not have a chance to improve, and treatment would be significantly impeded, unless he took a complete leave of absence from his duties and all demands and stresses.

24.     In August of 2007, RPI granted Dr. Veryzer a leave of absence with pay until December 31, 2007.

25.     Dr. Veryzer was then granted an unpaid personal leave of absence by RPI as recommended by Dean David Gautschi and HR VP Curtis Powell for the period of Jaaury 1, 2008, through December 31, 2008.

26.     Dean Gautschi and VP Powell also suggested that Dr. Veryzer apply for coverage under RPI's Disability Insurance Plan.

27.     In late 2008, Dr. Veryzer applied for Social Security Disability, which was granted retroactive to July 31, 2007.

28.     Over the course of the summer of 2008, Dr. Veryzer attempted to secure the teaching assignments for his planned January 2009 return to teaching.  Such a significant advanced preparation was needed given his medical condition.

29.     Despite persistent and repeated attempts to obtain the course assignments from RPI, it was not provided to Dr. Veryzer until mid-September of 2008.  Dr. Veryzer noted the problem this delay caused him both in a meeting with Associate Dean Durgee and his correspondence affirming the

teaching assignments. Still, he began to prepare the assigned courses, which were in line with his previous teaching.

30.    In October, Dr. Veryzer was notified by the Lally School (Associate Dean Durgee) of a change in courses he was to teach (and had been prepping to teach) and that he was now being assigned a new course for which he had no previous experience or directly related background.

31.    Dr. Veryzer immediately attempted to make RPI aware of the significant problems that such changes represented for him.

32.    Dr. Veryzer first communicated this to Associate Dean Durgee, and then finally to Dean Gautschi. In a subsequent meeting with Dean Gautschi (which took place on November 4, 2008), the Dean acknowledged that the late change of course assignment created severe problems for Dr. Veryzer. Among the solutions discussed were a return to the original assignment or allowing him to teach a reduced load for the semester.

33.    However, several weeks later, Dr. Veryzer was told that he had to teach the revised schedule/course assignments and that if he did not, that RPI would consider that he had resigned.

34.    On December 23, 2008, after a previous telephone conversation he had with Curtis Powell, Vice President for Human Resources at RPI, in which he indicated flexibility in the manner of Dr. Veryzer's return date, Dr. Veryzer received a letter from Mr. Powell. In this letter, Dr. Veryzer was granted an extension of unpaid leave of absence from January 2, 2009, to June 30, 2009. The letter also informed him that (1) he must inform RPI of his intentions to return to work on July 2, 2009, by April 30, 2009; and (2) that "you must formally inform the Division of Human Resources of your intent to return to your full-time academic position one academic semester prior to your return of duty."

35.    On March 9, 18 and 25, 2009, Dr. Veryzer sent emails to Curtis Powell in which he sought to continue the dialog concerning his return to work and the reasonable accommodations which would be necessary for him to obtain from RPI. He also sought additional time on unpaid leave.

36.    On March 25, 2009, Mr. Powell finally replied to Dr. Veryzer's emails by refusing to discuss any of his concerns about reasonable accommodations.

37.    On March 27, 2009, Dr. Veryzer sent an email to Provost Robert E. Palazzo, in which he protested Mr. Powell's refusal to discuss reasonable accommodations and he again asked for an extension of the deadline for his return to work.

38.     On April 14, 2009, Provost Palazzo replied to Dr. Veryzer in an email in which he did not address any concerns regarding reasonable accommodations and reiterated that Dr. Veryzer must state his intent to return to work on July 1, 2009, no later than April 30, 2009.

39.     On April 22, 2009, Dr. Veryzer sent a reply letter to Provost Palazzo in which Dr. Veryzer attempted to correct some of the misstatements in the communication of April 14, 2009. Dr. Veryzer again requested to discuss accommodations which would be necessary for his return to work. Dr. Veryzer received no reply to this letter.

40.     On April 27, 2009, Dr. Veryzer sent another letter to Mr. Powell in which he again stated that: "I have not resigned and am not resigning my position as an Associate Professor in the Lally School of Management and Technology."

41.     On May 1, 2009, Dr. Veryzer received a letter from Mr. Powell in which it states that RPI "considers that you have resigned."

42.     On May 6, 2009, attorney Joseph C. Berger sent a letter to Curtis Powell in which was stated Dr. Veryzer's intention to return to work at RPI and the reasonable accommodations requested. These requested accommodations were consistent with Dr. Veryzer's normal teaching schedule throughout his RPI teaching career (even prior to the medical situation). One request for a temporary reduction in his course load had been periodically granted over the course of Dr. Veryzer's medical situation. All of the accommodations were modest requests. Most of them simply were the usual conditions under which Dr. Veryzer had taught throughout his career. These requests would not have been burdensome to RPI in any way. Again, for example, having an adjunct cover one of the courses typically resulted in a significant cost savings to the school.

43.     In the first week of June, 2009, Dr. Veryzer learned that his access to his RPI email account had been terminated.

44.     Sometime before June 21, 2009, Dr. Veryzer received a call from RPI asking him to immediately clear out his office.

45.     In a letter dated June 15, 2009, but not received until June 21, 2009, Mr. Powell finally responded to Dr. Veryzer's counsel's letter of May 6, 2009. Mr. Powell stated: "the conditions you have requested are unreasonable and cannot be granted." The letter states that some physician documentation of the disability is needed and included a form to be filled out by the physician. The request seemed unnecessary since in 2007 RPI had been notified by its Long Term Disability provider that it had

determined that Dr. Veryzer is disabled. The letter demanded that the physician form be returned no later than June 26, 2009.

46.     Dr. Veryzer's counsel informed Mr. Powell that Dr. Veryzer would comply with the request for the documentation as quickly as possible, but given the short period between the arrival of the letter and the deadline (and the upcoming holiday), it might not be possible to secure the information from the physician until early July.

47.     When Dr. Veryzer arrived on campus on June 23, 2009, most of his books and effects were already packed up. He spoke with Associate Dean Durgee concerning this and pointed out that the recent communication from HR Vice President Curtis Powell implied that the matter was still being discussed. Dr. Veryzer then asked that Dean Durgee contact HR to confirm this. After doing so, the Associate Dean continued to insist that Dr. Veryzer was to move out of his office immediately.

48.     On June 24, 2009, Dr. Veryzer called Mr. Powell to once again ask for access to his RPI email account. Mr. Powell stated that Dr. Veryzer would not be given access to his former email account because "You are no longer an employee of Rensselaer."

49.     On June 29, 2009, Dr. Veryzer forwarded the physician statements requested by Mr. Powell. Dr. Veryzer attempted to contact Mr. Powell several more times, regarding the issue of reasonable accommodations, but no response from anyone at RPI was received.

50.     Dr. Veryzer was terminated from his position with RPI because of his disability and after RPI refused to even discuss reasonable accommodations, which he requested. These actions are blatant violations of the Americans with Disabilities Act and the New York Human Rights Law.

51.     The treatment that Dr. Veryzer was forced to endure by having his email account shut without warning and by being ordered to pick up his belongings which had already been thrown in boxes, constituted harassment sufficiently severe or pervasive as to alter a term, condition or privilege of his employment.

52.     Dr. Veryzer was terminated from his employment because of his disability.

53.     RPI completely refused to even discuss Dr. Veryzer's request for reasonable accommodations, except to reject them with no explanation.

54.     Dr. Veryzer was extremely upset, humiliated, and shocked when he learned that RPI had terminated his employment.

55.     Dr. Veryzer felt that the impressive academic career which he had established over many years had been utterly destroyed by RPI's unwarranted actions.

56.     After his termination, Dr. Veryzer experienced extreme hopelessness.  He felt that everything he had worked for was gone.  He suffered an exacerbation of his physical symptoms.

57.     Instead of returning to his beloved profession with reasonable accommodations, as he had hoped, he was now jobless and humiliated.

58.     The mental anguish caused by his unwarranted termination has detrimentally affected Dr. Veryzer's recovery from his disability.

59.     Dr. Veryzer is a "qualified individual with a disability" as defined in Section 101(8) of the ADA, 42 U.S.C.A. § 12111(8).

## FILING WITH THE EEOC

60.     On December 29, 2009, the Plaintiff timely filed a Charge of Discrimination with both the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights, alleging that the Defendant had discriminated against him on the basis of his disability in violation of the Americans with Disability Act (42 USCS §12101 et seq.).

61.     On October 6, 2011, the EEOC issued a Determination which set forth that: (a) "an analysis of the evidence as a whole reveals that the requested accommodations would not have posed an undue hardship for Respondent;" and (b) "the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party on the basis of disability." (Attached as Exhibit "A" is the October 6, 2011, Determination).

62.     Pursuant to the directives of the October 6, 2011, Determination, the parties attempted to settle this matter through informal methods of conciliation.

63.     No settlement was reached between the parties.

64.     On December 23, 2011, the EEOC issued a Notice of Right to Sue which sets forth in pertinent part, "the EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you." (Right to Sue Letter attached as Exhibit "B").

65.     Less than 90 days have elapsed since the date upon which the Plaintiff received his "Notice of Right to Sue" from the EEOC.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Violation of the Americans with Disabilities Act)

66.     The Plaintiff requests, reiterates and realleges each and every allegation contained in paragraphs "1" through "65" above as if said paragraphs were set forth herein at length.

67.     RPI is a "covered entity" as that term is defined by the ADA.

68.     Dr. Veryzer suffers from a disability as defined under the ADA in that he has suffered toxic substance poisoning resulting in brain trauma and severe cognitive and physical impairment.  The Plaintiff was also regarded as suffering from a disability.

69.     After he became disabled, RPI refused to provide Dr. Veryzer with reasonable accommodations to allow him to continue working, in violation of the ADA.

70.     RPI terminated Dr. Veryzer's employment because of his disability.

71.     As a result of the foregoing, RPI has discriminated against Dr. Veryzer in violation of the ADA by denying him equal terms and conditions of employment, including but not limited to, denying him the opportunity to work because of his disability.

72.     As a direct and proximate result of RPI's unlawful and discriminatory conduct in violation of the ADA, Dr. Veryzer has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits, all in an amount which cannot be accurately determined at this time, but in no event will be less than Three Million Dollars ($3,000,000.00).

73.     As a direct and proximate result of RPI's unlawful and discriminatory conduct in violation of the ADA, Dr. Veryzer has suffered and continues to suffer severe mental anguish and distress, including but not limited to humiliation, embarrassment and anxiety,

74.     RPI's unlawful and discriminatory actions constitute willful violations of the ADA for which Dr. Veryzer is entitled to an award of punitive damages to be determined by a jury all in an amount which cannot be accurately determined at this time, but in no event will be less than One Million Dollars ($1,000,000.00).

### AS AND FOR A SECOND CAUSE OF ACTION
#### (Violation of the Duty of Reasonable Accommodation)

75.     Plaintiff hereby repeats, and realleges each and every allegation in paragraphs "1" through "74," inclusive, as if fully set forth herein.

76.     RPI violated its duty under the ADA to provide Dr. Veryzer with reasonable accommodations  based on his obvious and known disability.

77.     RPI failed to demonstrate a good faith effort to consult with Dr. Veryzer in order to identify and make reasonable accommodations which would have afforded Dr. Veryzer an opportunity to continue to perform his essential job functions.

78.     Upon information and belief, the requested accommodations would not have caused RPI an undue hardship in the operation of its business.

79.     As a direct and proximate result of RPI's violation of the duty of reasonable accommodation under the ADA, Dr. Veryzer has suffered and continues to suffer harm for which he is entitled to an award of damages.

80.     RPI's unlawful conduct constitutes a knowing, malicious, willful and wanton violation of the ADA.  Dr. Veryzer has suffered a loss of employment, pension and related benefits, wages, salary, financial opportunity and career opportunity; and based on his suffering, is entitled to an award of compensatory as well as punitive damages, costs and attorney's fees, all in an amount which cannot be accurately determined at this time, but in no event will be less than Three Million Dollars ($3,000,000.00).

### AS AND FOR A THIRD CAUSE OF ACTION
#### (Discrimination in Violation of New York State Human Rights Law)

81.     Plaintiff hereby repeats, and realleges each and every allegation in paragraphs "1" through "80," inclusive, as if fully set forth herein.

82.     RPI has discriminated against Dr. Veryzer on the basis of his documented medical disability in violation of the New York State Human Rights Law by denying him equal terms and conditions of employment, including but not limited to, terminating his employment.

83.     As a direct and proximate result of RPI's unlawful discriminatory conduct in violation of the New York State Human Rights Law, Dr. Veryzer has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of damages all in an amount which cannot be accurately determined at this time, but in no event will be less than Three Million Dollars ($3,000,000.00).

84.     As a direct and proximate result of RPI's unlawful discriminatory conduct in violation of the new York State Human Rights Law, Dr. Veryzer has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of damages all in an amount which cannot be accurately determined at this time, but in no event will be less than Three Million Dollars ($3,000,000.00).

WHEREFORE, Dr. Veryzer prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A.   A declaratory judgment that the actions, conduct and practices of RPI complained of herein violate the laws of the United States and the State of New York.

B.   An award of back pay in an amount to be determined at trial, plus prejudgment interest on the back pay award based on the interest rate for short-term United States Treasury bills, compounded annually for the entire back pay period all in an amount which cannot be accurately determined at this time, but in no event will be less than One Million Dollars ($1,000,000.00);

C.   An award of front pay, to compensate Dr. Veryzer for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment in an amount which cannot be accurately determined at this time, but in no event will be less than Three Million Dollars ($3,000,000.00);

D.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Dr. Veryzer for all non-monetary and/or compensatory damages, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries all in an amount which cannot be accurately determined at this time, but in no event will be less than Three Millions Dollars ($3,000,000.00);

E.   An award of damages for any and all other monetary and/or non-monetary losses suffered by Dr. Veryzer in an amount to be determined at trial, plus prejudgment interest all in an amount which cannot be accurately determined at this time, but in no event will be less than Three Million Dollars ($3,000,000.00);

F.   An award of punitive damages all in an amount which cannot be accurately determined at this time, but in no event will be less than One Million Dollars $1,000,000.00);

G.   An award of liquidated damages all in an amount which cannot be accurately determined at this time, but in no event will be less than One Million Dollars ($1,000,000.00);

H.   An award of costs that Dr. Veryzer has incurred in this action, as well as his reasonable attorney's fees to the fullest extent allowed by law; and

I.   Such other and further relief as the Court may deem just and proper.

Dated: February 29 , 2012                THE MURRAY LAW FIRM, PLLC


By:   Joseph C. Berger
      Joseph C. Berger, Esq.
      Bar Roll No.: 101142
      Attorney for Plaintiff
      10 Maxwell Drive, Suite 100
      Clifton Park, NY  12065
      518-688-0755

STATE OF MICHIGAN      )
                       ) ss
COUNTY OF CHARLEVOIX   )

Dr. Robert Veryzer, being duly sworn, deposes and says:    I am the Plaintiff in this action.  I have read the foregoing complaint and know the contents thereof; the same are true to the best of my knowledge, except as to matters therein stated to be alleged upon information and belief; and as to those matters I believe them to be true.

The undersigned swears that the foregoing statements are true, under the penalties of perjury.

**BREANNE DAWSON**
**NOTARY PUBLIC - MICHIGAN**
**ANTRIM COUNTY**
**MY COMMISSION EXPIRES APRIL 16, 2018**
**ACTING IN CHARLEVOIX COUNTY**

_____
Dr. Robert Veryzer

Sworn to before me this 28 day of February, 2012.

_____
Notary Public

EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Newark Area Office**

1 Newark Center, 21ˢᵗ Floor
Newark, NJ  07102-5233
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Newark Status Line: (866) 408-8075
Newark Direct Dial: (973) 645-4684
TTY (973) 645-3004
FAX (973) 645-4524

## FINAL DETERMINATION

Robert Veryzer
~~48K Mathandalextane~~
Clifton Park, NY 12065

CHARGE NO: 525-2010-00229

Rensselaer Polytechnic Institute
110 8ᵗʰ St.
Troy, NY 12180

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under the Americans with Disabilities Act, as amended.  Respondent is an employer within the meaning of the Act.  All requirements for coverage have been met.

Charging Party alleges he was hired by Respondent in or about 1993 as an Assistant Professor and was promoted to Associate Professor in or about 1999.  He alleges he has a disability that Respondent was made aware of.  He states that he requested the reasonable accommodation of leaves of absences related to same, which was initially granted by Respondent.  However, he further alleges he needed certain reasonable accommodations granted by Respondent in order for him to return to work on or before July 1, 2009.  He submitted his requests for same to Respondent, yet Respondent resisted granting him the accommodations and ultimately refused to provide same despite his contention that the accommodations would not pose an undue hardship for Respondent.  He asserts that he was consequently separated from employment on or about June 24, 2009.

Respondent denies that Charging Party has been discriminated against.  Respondent contends that it accommodated Charging Party over an extended period of time, engaged in the interactive process, and ultimately terminated his employment only when he was unable to return to work and his position had to be filled.

Credible evidence confirms that Charging Party has a disability as defined by the statute. Respondent does not deny that it was aware of Charging Party's disability.

There is no dispute that Charging Party was initially afforded the reasonable accommodation of multiple leaves of absence. However, the evidence confirms that Respondent refused to grant to Charging Party the reasonable accommodations he would need to return to work. An analysis of the evidence as a whole reveals that the requested accommodations would not have posed an undue hardship for Respondent.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party on the basis of disability.

This determination is final. The statute requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with the statute and the Commission's Procedural Regulations. The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

Judy Keenan
Acting Area Director

OCT 6 – 2011
Date

EXHIBIT B

EEOC Form 161-A (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

To: Robert Veryzer
~~438 Hoganville Lane, Apt. 45K~~
Clifton Park, NY 12065

From: Newark Area Office
1 Newark Center
21st Floor
Newark, NJ 07102

|  |
|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2010-00229 | **Amparo Soto,** Enforcement Supervisor | **(973) 645-6021** |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Judy A. Keenan,
Acting Area Director

DEC 23 2011

*(Date Mailed)*

cc:  Kristine Derewicz, Esq.
Little Mendelson PC
Three Pkwy
1601 Cherry St., Suite 1400
Philadelphia, PA 19102

Joseph C. Berger
THE MURRAY LAW FIRM, PLLC
10 Maxwell Drive Suite 100
Clifton Park, NY 12065

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

PRIVATE SUIT RIGHTS   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than** **2 years (3 years)** **before you file suit** may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DR. ROBERT VERYZER,

**DEMAND FOR A JURY TRIAL**

Plaintiff,

-against-

RENSSELAER POLYTECHNIC INSTITUTE

Pursuant to FRCP Rule 38, a demand is hereby made that the above-referenced action be tried by a jury.

Dated: February 29 , 2012                    THE MURRAY LAW FIRM, PLLC

By:

Joseph C. Berger, Esq.
Bar Roll No.: 101142
Attorney for Plaintiff
10 Maxwell Drive, Suite 100
Clifton Park, NY  12065
518-688-0755